[No. 1466-1.    Division One—Panel 2.    May 29, 1973.]

WILLIAM F. HANDLEY, *Appellant,* v. FRANCHISE MARKETING SERVICES, INC., *et al., Respondents.*

*Lund, Franklin & DeLong* and *Sam B. Franklin,* for appellant.

*Mullavey, Hageman, Prout & Kirkland* and *Thomas D. Coughlin,* for respondents.

CALLOW, J.—This action was brought by the plaintiff, a

Washington resident, against 22 named defendants on alternative theories of breach of contract, fraud and tortious conduct. Eighteen of the defendants are not residents of the state of Washington, but all were served personally with a summons and complaint. Each defendant, except Coletta Long, entered a special appearance moving to quash the summons and complaint. The basis for moving to quash service was a claimed want of jurisdiction. The plaintiff did not deny that the corporate defendants were doing business in other states but claimed that they were doing business in the state of Washington. The individual defendants are present or former officers, directors or employees of the corporate defendants. The court ruled that the defendants should be dismissed for want of jurisdiction, and it is from this order that the appeal is taken.

The defendant Mrs. Long purchased franchises from the defendants Koseff and the corporations Franchise Marketing Services, Inc., and Franchise Analysts and Consultants, Inc., by written contracts negotiated in the state of Washington. The Franchise Analysts franchise was purchased on August 18, 1967, and the Franchise Marketing Services franchise on April 15, 1968, by Mrs. Long. These franchises were conveyed to Coletta Long as a direct result of personal representations and presentations made in Washington by the defendant Koseff pursuant to written contracts executed in Washington which were to be supervised and supported by personnel, materials and publicity provided by the corporations and by the defendants Koseff, Kimmel, Gianno and Bentler.

These original franchises were purchased and assumed from the defendant Coletta Long by the plaintiff Handley in 1968. The parties to these contracts in addition to the plaintiff were Coletta Long and the defendants Koseff and the corporations. The Polly Priest Business College franchise was purchased by the plaintiff Handley in April, 1968, from Mrs. Long subject to the approval of Mr. Koseff and the other individual defendants who reside in California.

This was a company which was merged into Franchise Marketing Services, Inc., in January 1969.

The other franchise rights were purchased from the defendant Long and the defendants who resided in California in June 1968. All three of these franchise contracts were to be performed by the plaintiff in counties in the state of Washington, and the "contractor" (the plaintiff) was to be the exclusive consultant of the foreign corporations to represent and sell franchises in those areas. The total price paid by the plaintiff for the three franchises was $27,000 with the assignment of Mrs. Long's franchise rights subject to approval by Koseff and the other defendants who resided in California.

On June 13, 1968, the plaintiff went to California to obtain the required approvals. Mr. Koseff approved and accepted the purchase and assignment and the new contracts were entered into between the plaintiff and the corporations in the same form as the original contracts between the corporations and the defendant Long. These new contracts had typed onto the form the words "Payment for franchise has been made directly to Seattle office." The plaintiff alleged that some of the $27,000 paid for the three franchises went directly to the corporations, Koseff and the other defendants who are residents of California. The complaint also alleges that the corporations were alter egos of Koseff and Kimmel and that all of the individual defendants who resided in California were the persons controlling the purported corporate entities and the "Polly Priest Business College" when the plaintiff purchased each franchise.

The plaintiff's complaint sets forth a cause of action for misrepresentation against Koseff and alleges a breach of the franchise contracts by the corporations and all of the individual California defendants. The defendant Kimmel admits that representatives of the corporations provided services to the plaintiff in Washington on a number of occasions; and on at least two of the occasions, Mr. Koseff was in Washington pursuant to the contract provisions. The

contracts of both corporations recite that the corporations provide services on an international basis.

The defendants claim that none of the corporate defendants were established under the laws of the State of Washington nor were they qualified to do business in Washington. Further, it is their position that none of the foreign corporations had officers, salesmen, agents, or warehouses in Washington and that all of the accounting was done outside of the state of Washington. The defendants further claim that they did not deal with the plaintiff in the state of Washington and that the plaintiff in purchasing the franchise relied upon presentation tapes which were supplied by Mrs. Long. Parenthetically, however, we must observe that these tapes were supplied to Mrs. Long by the foreign defendants. Finally, the defendants point out that the training sessions for the plaintiff took place in California and that the plaintiff did not receive any telephone contracts or brochures concerning the corporations until after he had signed the contracts with the defendant corporations in California.

The only assignment of error raised is the challenge to the granting of the defendant's motion to quash and the dismissal of all defendants for lack of jurisdiction.

RCW 4.28.185 reads as follows:

(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:
(a) The transaction of any business within this state;
(b) The commission of a tortious act within this state;
. . .
(2) Service of process upon any person who is subject to the jurisdiction of the courts of this state, as provided in this section, may be made by personally serving the defendant outside this state, as provided in RCW 4.28.180, with the same force and effect as though personally served within this state.
(3) Only causes of action arising from acts enumerated

herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

(4) Personal service outside the state shall be valid only when an affidavit is made and filed to the effect that service cannot be made within the state.

■■■ The starting place for insight into the current interpretation and application of RCW 4.28.185 is *Tyee Constr. Co. v. Dulien Steel Prods., Inc.,* 62 Wn.2d 106, 381 P.2d 245 (1963). The *Tyee Constr. Co.* case said that to satisfy the due process requirements and standards of the federal constitution it was required, in order to subject a nonresident defendant to an "in personam" judgment, that such a defendant have

> *certain minimum contacts with* [the forum] *such that the maintenance of the suit* [did] *not offend 'traditional notions of fair play and substantial justice.'* . . ." (Italics ours.)

While the trend was described as expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents, it was also stated that a nonresident defendant would not be subjected to defending in a foreign tribunal unless minimal contacts with the forum existed. Whether due process is satisfied depends upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. The court in *Tyee Constr. Co.* commented upon *Hanson v. Denckla,* 357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958), noting that that case denied state jurisdiction over nonresident defendants primarily because there was no solicitation of business in the forum state either in person or by mail. The oft quoted criteria from *Tyee Constr. Co.* concerning the existence of jurisdiction follows at page 115:

> there are three basic factors which must coincide if jurisdiction is to be entertained. Such would appear to be: (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or trans-

action; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

(Footnotes omitted.) With these criteria in mind, the court denied jurisdiction to the forum state noting that the foreign defendant (a) had his principal place of business in another state and never solicited business or qualified or registered to do business in the forum state nor kept or maintained any officer, personnel, advertising, telephone list, goods or property there. Further, the court noted that the resident plaintiff solicited the foreign defendant regarding the transaction concerned and that negotiations between the resident-plaintiff and the nonresident defendant were conducted by telephone, correspondence and inspection trips by agents of the nonresident defendant and that negotiations between the nonresident defendant and the ultimate purchaser of the subject matter of the transaction were conducted out of the state. Finally, the court noted that the nonresident defendant acted primarily as a broker in connection with the transaction. The court considered and balanced the fact that the nonresident defendant had his principal place of business outside of the state, that the transaction represented an isolated business excursion of his into the forum state, that his participation in the transaction involved was solicited by the resident, that there was no continuing service by the nonresident, that the presence of agents of the nonresident was incidental rather than essential to the transaction and that the primary action rested upon the contract entered into between residents and that there was inconvenience and expense incident to the nonresident defendant. The court concluded that to impose personal jurisdiction in the forum state would offend traditional notions of fair play and substantial justice.

*Bowen v. Bateman*, 76 Wn.2d 567, 458 P.2d 269 (1969), involved the solicitation of residents of the state of Washington to purchase Brazilian real estate. The defendants were residents of Indiana and placed advertisements in various Washington newspapers which, when a Washington resident responded thereto, were followed by brochures to the Washington resident. The Washington resident then proceeded to use the information in the brochures to contact prospective purchasers in Washington. When the possibility of selling Brazilian real estate fell through, the Washington purchasers brought suit against the Washington agent of the Indiana defendant and the Indiana defendants themselves. The issue was stated as being whether or not the Indiana residents individually or through an agent transacted any business or committed a tortious act within the state of Washington. The court considered the previous Washington cases on the subject commenting at page 572:

> seller could have availed itself of the use of Washington courts if necessary to enforce its rights, and that since it accepted the benefits of Washington law, it should be subject to its burdens.
>     . . . president of the Oregon corporation had made a trip to Seattle . . . the Oregon manufacturer had held itself out as available to service the machine . . . while the retention of title standing alone might not be enough to confer jurisdiction, when coupled with the other acts above mentioned, it would justify our courts in taking jurisdiction. [*Nixon v. Cohn*, 62 Wn.2d 987, 385 P.2d 305 (1963)]

again at page 573:

> a California insurance brokerage ordered, by telephone and mail, a policy of aircraft insurance from an insurance broker in Seattle. The Seattle broker procured the coverage from Lloyd's in London. We held that the nonresident firm had performed acts in making it a party to and participant in a business transaction in Washington, thus submitting to the jurisdiction of the Washington courts under the long-arm statute as to that particular transaction. [*Griffiths & Sprague Stevedoring Co. v. Bayly, Martin & Fay, Inc.*, 71 Wn.2d 679, 430 P.2d 600 (1967)]

and again at page 573:

The defendant maintained its . . . offices in Boston, Massachusetts. It had no employees, property, or shareholders, nor had it been licensed to do business in the state of Washington. We said at 681:

If the circulation of an alleged libel in the state of Washington, under the circumstances of this case, constitutes either the "commission of a tortious act" or the "transaction of any business" within this state, then the answer to the certified question [jurisdiction under long-arm statute] must be "yes." [*Thiry v. Atlantic Monthly Co.*, 74 Wn.2d 679, 445 P.2d 1012 (1968)]

Further, the court in *Bowen v. Bateman* pointed out that the cases they discussed illustrated the acts which had been held to constitute sufficient contact with the state to impose the long-arm statute either on the basis of transacting business or in the commission of a tortious act. Jurisdiction was imposed when the court found that the defendant did the following at page 574:

(1) placed advertisements in various Washington newspapers; (2) mailed a brochure to Bateman; (3) made an "interesting telephone presentation" to Bateman, which culminated in an arrangement whereby Bateman would purchase land from Selig for purposes of resale at a price set by Selig; (4) furnished Bateman with information and brochures for use in his contacts with prospective purchasers in the state of Washington; (5) entered into a real estate contract with Bateman; (6) held himself out as an intermediary broker in Bateman's contracts with ultimate Washington purchasers and agreed to deliver title directly from himself to such ultimate purchasers upon payment in full; and (7) received and retained payments from Washington purchasers under an arrangement with the Old National Bank of Pasco.

Important also was that the out-of-state defendants deliberately and purposely sought contact with the Washington residents as customers, that the benefits of the contracts entered into flowed directly to the out-of-state resident and that the contracts were enforceable in the state of Washington. The court finally noted that if tortious acts were committed outside the state of Washington which caused injury within the state then the tortious acts and the injury

were inseparable and jurisdiction would lie in Washington where the injury occurred. It is in the interest of Washington courts to protect its citizens against the tort of fraud.

In *State v. Reader's Digest Ass'n*, 81 Wn.2d 259, 501 P.2d 290 (1972), the defendant contested personal jurisdiction which the state claimed under the consumer protection act, RCW 19.86.160. The court commented that the performance of an unfair trade practice in Washington, though by a foreign corporation which had no agents, employees, offices or property in the state, was sufficient to establish jurisdiction. Jurisdiction was based on the fact that damages were suffered within the state even though they resulted from an alleged tortious act occurring outside the state. Since the foreign corporation had contacted Washington residents to increase sales and derive profits from them, that activity satisfied the minimum contact requirement; and traditional notions of fair play were not offended.

*Smith v. York Food Mach. Co.*, 81 Wn.2d 719, 504 P.2d 782 (1972), involved an injury to a Washington resident from a machine manufactured elsewhere. The defendant did not maintain an office or register to transact business in the state. However, it advertised in magazines circulated in the state, mailed literature to potential customers in Washington and had made previous sales here. Jurisdiction was imposed under RCW 4.28.185 based on the fact that the purpose of the activity was to exploit the potential market in this state. *See also Ace Novelty Co. v. M.W. Kasch Co.*, 82 Wn.2d 145, 508 P.2d 1365 (1973).

We also call attention to *Harrison v. Puga*, 4 Wn. App. 52, 480 P.2d 247 (1971), where this court imposed jurisdiction on a foreign resident stating at page 67:

All in all, defendant from the beginning evidenced an intention to undertake substantial purposeful activity in the state of Washington in negotiating for, entering into, carrying out and terminating the contract involved utilizing Washington law for that purpose.

Here the nonresident defendants:

1. Entered into a franchise agreement with a Washington resident, the initial agreement being executed in Washington.

2. Granted by the agreement exclusive rights to represent the defendants in a defined area in Washington.

3. Approved the assignment of the rights in the business of one Washington resident to another Washington resident.

4. Recited in the new contracts entered into with the plaintiff that payment had been made to a Seattle office.

5. Promised in the contracts to provide sale aids for the continuation of the business in Washington.

6. Advertised in regional and national publications to promote the business in Washington for the benefit of the defendants as well as the plaintiff.

7. Based the compensation of the "contractor" on the volume of business which he performed in Washington for the foreign residents.

8. Are claimed to have misrepresented the business to Washington residents thereby causing them injury.

The assumption of jurisdiction over the defendants is justified. The minimum contacts necessary are present. The defendants sought out the Washington residents for their business purposes, and we are satisfied that the imposition of Washington jurisdiction is fair and just.

The dismissal of the action is reversed, and the cause is remanded for trial.

HOROWITZ and WILLIAMS, JJ., concur.