[No. 42768. En Banc. September 5, 1974.]

ANTONIJA WERNER et al., *Plaintiffs*, v. OTTIE C. WERNER et al., *Defendants*, MARTIN A. QUARNSTROM et al., *Appellants*, ROGER W. JOHNSON et al., *Respondents*.

*Torbenson, Thatcher & McGrath, P.S.,* by *Thomas F. McGrath, Jr.,* for appellants.

*McMullen, Brooke, Knapp & Grenier,* by *Robert E. Brooke, Robert K. Waitt* (of *Murray, Dunham & Waitt*), and *Malcolm S. Spence,* for respondents.

FINLEY, J.—Appellants Quarnstrom, et al., third-party plaintiffs below, are appealing the trial court's dismissal of their third-party complaint against the respondent third-party defendants. The threshold question is whether under the "long arm statute," RCW 4.28.185, respondents are properly before the Superior Court of Snohomish County for the trial of this lawsuit. We retained jurisdiction of this appeal to review the dismissal of the lawsuit by the trial court, which requires resolution of the indicated threshold question.

As will become apparent, the facts of this case are complex and the parties numerous. Apparently, in 1912, Otto K. and William Werner acquired a parcel of property in Snohomish County. In 1956, predeceased by his wife Susanna Werner, Otto K. Werner died. William Werner conveyed his interest in the parcel to Christine Werner, his wife. The public records prior to the transactions under scrutiny here show ownership of the parcel in Christine and Otto K. Werner.

In Los Angeles County, on December 15, 1969, a Carole Albin signed the signature of Christine Werner on a quitclaim deed purportedly from Christine Werner to an Ottie C. Werner, and also signed a 1 percent real estate tax affidavit. The acknowledgement of the quitclaim deed was executed by respondent Johnson, a California notary, insured by respondent surety Northwestern National Casualty Company.

At some time prior to December 8, 1969, Conner, a real estate salesman in Snohomish County, Washington, re-

ceived a call from a man who identified himself as Ottie C. Werner and who requested that Conner secure a buyer for the subject parcel. Conner advised appellant Quarnstrom of the offer to sell, and Quarnstrom made an offer to purchase the property for $45,000. On December 23, 1969, Pacific Northwest Escrow received the earnest money agreement and the December 15 quitclaim deed from "Christine Werner" with the accompanying tax affidavit. On December 29, 1969, Everett Abstract and Title Company issued a preliminary title commitment for title insurance which noted as an exception a possible cloud in the title relating to the interest of Ottie C. Werner. Except for the purported interest of Ottie C. Werner, the title to the parcel was reported to be vested in Otto K. Werner, presumptively subject to the community interest of Susanna, his wife.

On January 8, 1970, in Pomona, California, Carole and Alan Albin appeared before respondent notary public Pomeroy, employed by respondent Bromley & Kinney Insurance Co., and insured by respondent surety American States Insurance Company, and signed the signatures of Susanna Werner and Otto K. Werner to a quitclaim deed to Ottie C. Werner. A tax affidavit was also executed and notarized.

A statutory warranty deed from Ottie C. Werner to Quarnstrom and tax affidavit was acknowledged by respondent Peterman, employed by respondent H. H. Fetterling and insured by respondent surety Northwestern National Insurance Company, in Los Angeles County on January 8, 1970.

Subsequently, the several deeds were recorded, the $45,000 consideration was paid to the person purporting to be Ottie C. Werner (presumably Alan Albin), and from this Quarnstrom apparently thought himself the owner of the parcel which he sold to Matsuoka for $65,000. Thus endeth the factual scenario, or fiasco, depending upon one's point of view.

The appellant "purchasers" were understandably dismayed when in September of 1970 Antonija Werner and Otto K.

Werner, Jr., the heirs of Otto K. and Susanna Werner, filed suit to quiet title in the subject parcel. On April 26, 1971, summary judgment was entered quieting title to the parcel in the heirs of Otto K. and Susanna Werner.

With leave of court on April 26, 1971, Quarnstrom filed a third-party complaint against Johnson, Pomeroy, and Peterman, the California notaries public; Bromley & Kinney Insurance Company, H. H. Fetterling Co., employers of the notaries; and Northwestern National Casualty Co., American States Insurance Co., and Northwestern National Insurance Co., sureties of the notaries; and others. The Quarnstrom group asked for indemnity over and against the third-party defendants if the plaintiffs were successful in quieting title to the subject property. Pursuant to RCW 4.28.180, service of process was made on the notaries and their employers in California. The sureties of the notaries all do business within this state and, thus, were served in Washington.

Subsequently, Bromley & Kinney Insurance Co., the employer of Pomeroy, asserted that the title insurer of the parcel, appellant Transamerica Title Insurance Company, was liable for indemnification for any loss incurred by them. All respondents at trial and on appeal assert a lack of jurisdiction in the Washington courts over this matter.

In March 1973, a motion to dismiss third-party defendants for want of jurisdiction was granted. Third-party plaintiffs Quarnstrom and third-party defendant Transamerica Title Insurance Company join in appealing the order of the trial court granting the motion to dismiss.

Appellants assert that the Washington courts may exercise jurisdiction over the respondents pursuant to RCW 4.28.185 (1), which provides in pertinent part:

4.28.185 Personal service out of state—Acts submitting person to jurisdiction of courts—Saving. (1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his personal representative, to the

jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

(a) The transaction of any business within this state;
(b) The commission of a tortious act within this state;

Respondents contend they are beyond the jurisdiction of Washington courts as they have not had the constitutionally required "minimum contacts" with this State prerequisite to the exercise of jurisdiction under RCW 4.28.185. *See International Shoe Co. v. Washington*, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, 161 A.L.R. 1057 (1945); *Hanson v. Denckla*, 357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958). The respondent notaries, from whom their employers and sureties derive their potential liability, assert that they have not had the minimum contacts with this forum as they have never: (1) solicited business; (2) had representatives; nor (3) had any business contacts within the state of Washington.

This appeal squarely presents this court with the problem of defining the limits of in personam jurisdiction over the tortious acts of nonresident persons. At the outset, we address the issue of forum jurisdiction which, in our opinion, is solely a question of this State's *power to adjudicate*. Thus, in determining whether this forum may exercise its jurisdiction over respondents, we must narrow our focus to the limited issue of adjudicative power. Hence, for the purposes of preliminary analyses, we disregard considerations of choice of laws and forum convenience.

Long-arm jurisdiction in this state was intended to be operative to the full extent allowed by due process except where limited by the terms of the statute, RCW 4.28.185. *See Deutsch v. West Coast Mach. Co.*, 80 Wn.2d 707, 497 P.2d 1311 (1972); *Oliver v. American Motors Corp.*, 70 Wn.2d 875, 425 P.2d 647 (1967); *Tyee Constr. Co. v. Dulien Steel Prods., Inc.*, 62 Wn.2d 106, 381 P.2d 245 (1963). As conditions precedent to the exercise of in personam jurisdiction over nonresident defendants pursuant to RCW 4.28.185(1)(a) and (b), we have promulgated the following factors:

(1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

(Footnotes omitted.) *Tyee Constr. Co. v. Dulien Steel Prods., Inc., supra* at 115-16. These factors are, in part, a distillation of the due process standards announced in *International Shoe Co. v. Washington, supra,* and refined in *Hanson v. Denckla, supra; Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 94 L. Ed. 1154, 70 S. Ct. 927 (1950); *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 96 L. Ed. 485, 72 S. Ct. 413 (1952); *McGee v. International Life Ins. Co.* 355 U.S. 220, 2 L. Ed. 2d 223, 78 S. Ct. 199 (1957). *Cf.* Orland & Fischnaller, *Jurisdiction Salad: Washington Style,* 9 Gonzaga L. Rev. 1 (1973). The third factor relates both to standards and limitations of due process, or the power to adjudicate, and also, to the convenience of the forum. The latter consideration of forum appropriateness as a part of jurisdictional reach, no doubt, stems from this court's rejection of the doctrine of forum non conveniens in *Lansverk v. Studebaker-Packard Corp.,* 54 Wn.2d 124, 338 P.2d 747 (1959). The above criteria have served as functional guideposts anterior to the exercise of adjudicatory power. They are not necessarily the constitutional limits of the forum's jurisdiction. *See generally* vonMehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis,* 79 Harv. L. Rev. 1121 (1966); Comment, *Developments in the Law: State-Court Jurisdiction,* 73 Harv. L. Rev. 909 (1960); Kurland, *The Supreme Court, The Due Process Clause and the In Personam Jurisdiction of State Courts,* 25 U. Chi. L. Rev. 569 (1958). *See also* Congressional Research Service,

*The Constitution of the United States of America* 1417-25 (L. Jayson ed. 1973).

 Examining the facts in view of these factors, the notaries, in this instance, were not principals in the transaction in question, but catalysts without whose jurats the documents would not have been valid; *see* RCW 64.04.020; RCW 64.08.020; RCW 64.08.050. As public officers, notaries enjoy a unique status within our legal system as the notarial seal is a mandatory legal prerequisite to the valid execution of many documents.[1] In an age of burgeoning land sales, the notarial function has become the keystone of real estate transactions. While in many instances the acknowledgement is affixed perfunctorily, the presence of the jurat serves to assure the grantees that the signatures of unknown and often unseen grantors are bona fide. As stated by John Wigmore in 1928:

> The notary's certificate of acknowledgment of a deed is the pillar of our property rights. All titles depend on official records; and all official records depend on the notary's certificate of acknowledgment. And these pillars of property become a treacherous support when they are permitted with forgery. A practice which permits forgery is as dangerous in policy as it is unsound in principle.

Wigmore, *Notaries Who Undermine Our Property System*, 22 Ill. L. Rev. 748, 749 (1928).

Historically "the laws of the place, where such property is situate, exclusively govern in respect to the rights of the parties, the modes of transfer, and the solemnities, which should accompany them." J. Story, *Commentaries on the*

---

[1] The role of the notary public is of great importance in the validation of the signatories to various legal documents. The abundance of Washington statutes which incorporate the notarial function are evidence of the importance of the jurat. *See, e.g.,* 4.28.310; 4.56.090; 5.52.050; 6.12.040; 11.80.130; 16.57.090; 18.85.120; 19.31.100; 19.80.010; 22.28.040; 24.24.010; 26.04.150; 26.32.070; 32.04.070; 35.92.350; 42.28.040; 42.28.050; 44.04.100; 46.12.030; 46.16.270; 46.16.370; 46.80.090; 47.28.060; 48.36.120; 58.17.160; 58.17.165; 61.16.010; 61.16.020; 62A.3-509; 64.08.010; 64.08.020; 65.12.035; 65.12.230; 65.12.260; 74.09.182; 78.40.606; 81.77.040; 82.36.310; 82.50.185; 84.34.030; 87.03.560; 87.03.650.

*Conflict of Laws* § 424 (1834). Thus, the local forum is the ultimate arbiter of a party litigant's interest in land, or more properly immovables, within its jurisdiction. *See* R. Weintraub, *Commentary on the Conflict of Laws,* ch. 8 (1971); R. Leflar, *Conflict of Laws* § 22 (1959); Goodrich, *Two States and Real Estate,* 89 U. Pa. L. Rev. 417 (1941). *Cf.* Restatement (Second) Conflict of Laws § 222, Topic 2 (1971).

The whole of our system of title registration hinges upon the integrity of the documents which comprise it. As in the instant case, the corruption of that system may cause substantial economic loss to the parties involved. The notary, as a public officer, has a duty to take reasonable precautions to assure that his seal will not be the vehicle by which a fraudulent transaction is consummated. In our opinion, therefore, the State of Washington has the power to extend its jurisdiction to reach the nonresident notaries in this action. We hold that, consistent with due process, RCW 42.28.185(1)(b) encompasses the tortious actions of nonresident notaries when a notarized forgery is affixed to a document affecting interests in immovables. *Cf. Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.,* 66 Wn.2d 469, 403 P.2d 351 (1965).

The potential liability of the employers and the insurers, as we have stated, is derived from that of the notaries. While the notaries are public officers, it may be assumed that there is a sufficient agency relationship with their employer to render the employers also subject to this forum's jurisdiction. Whether the employee-employer relationship was sufficient to subject the employer to liability for the notaries' actions is a question of fact to be determined under the forum law applicable to this action, *see infra. See generally* Comment, *The Negligent Notary Public-Employee: Is His Employer Liable?,* 48 Neb. L. Rev. 503 (1969).

The appellants have attempted an "end-run" around the question of jurisdiction over the sureties by serving them in this jurisdiction as they do business within

Washington. We must reject this attempt to gain in personam or quasi in rem jurisdiction over the insurers. The existence of a potential derivative liability on the part of the insurers on their surety contract with the notaries does not serve as an independent basis of jurisdiction. *See Ace Novelty Co. v. M.W. Kasch Co.,* 82 Wn.2d 145, 508 P.2d 1365 (1973). *But cf. Seider v. Roth,* 17 N.Y.2d 111, 269 N.Y.S.2d 99, 216 N.E.2d 312 (1966); *Minichiello v. Rosenberg,* 410 F.2d 106 (2d Cir.), *cert. denied,* 396 U.S. 844, 24 L. Ed. 2d 94, 90 S. Ct. 69 (1969). *See also* Comment, *Long-Arm and Quasi in Rem Jurisdiction and the Fundamental Test of Fairness,* 69 Mich. L. Rev. 300 (1970). The question of jurisdiction over the sureties becomes somewhat academic in view of our holding vis-a-vis the notaries. As the notaries are subject to in personam jurisdiction, the sureties may also be served. The basis for jurisdiction, however, is derived from our jurisdictional power over the notaries, and *not* the fortuity of the sureties' presence within this state.

■ The proper choice of law in this case is a rather clearcut matter. This court has adopted the "most significant contacts" approach of the Restatement (Second) Conflict of Laws. *See Baffin Land Corp. v. Monticello Motor Inn, Inc.,* 70 Wn.2d 893, 425 P.2d 623 (1967); *Potlatch No. 1 Fed. Credit Union v. Kennedy,* 76 Wn.2d 806, 459 P.2d 32 (1969). Were this a question of title to immovables within the state, we would apply the law of this forum as the state of situs. *See* Restatement (Second) Conflict of Laws § 222, Topic 2 (1971). This action for negligence against the notaries sounds in tort. We must consider the significant contacts of this cause with the states of Washington and California. The plaintiff purchasers are presumably here, as well as, the real estate agent, Conner, and, of course, the subject parcel. In California, however, reside the notaries, their employers and sureties, and probably the forgers. Most importantly, the notaries are public officers of the state of California. Thus, their duties as notaries and potential liabilities must be defined according to California law.

California case and statutory law imposes upon the notary rather stringent standards of conduct. Cal. Civ. Code § 1185 states:

> The acknowledgment of an instrument must not be taken, unless the officer taking it knows or has satisfactory evidence, on the oath or affirmation of a credible witness, that the person making such acknowledgment is the individual who is described in and who executed the instrument; or, if executed by a corporation, that the person making such acknowledgment is the president or secretary of such corporation, or other person who executed it on its behalf.

The liability of notaries is addressed by Cal. Gov. Code § 8214:

> For the official misconduct or neglect of a notary public, he and the sureties on his official bond are liable to the persons injured thereby for all the damages sustained.

The question of the liability of a notary for failure to ascertain the identity of two imposters was addressed in *Transamerica Title Ins. Co. v. Green,* 11 Cal. App. 3d 693, 89 Cal. Rptr. 915 (1970). In *Green,* a notary relied upon the word of his law partner as to the identity of two women masquerading as the wives of firm clients. The California Court of Appeal held that Green had not exercised the care required by Cal. Civ. Code § 1185 of acknowledgements, and therefore, he had committed an act of "official misconduct" under Cal. Gov. Code § 8214. Green and his surety were held liable for the losses incurred by the plaintiff title insurance company.

In *McDonald v. Plumb,* 12 Cal. App. 3d 374, 90 Cal. Rptr. 822 (1970), the court held that a false acknowledgement need not have been the sole cause of the plaintiff's loss, but it was sufficient that the notary's misfeasance was *a* proximate cause of injury. *See also Anderson v. Aronsohn,* 181 Cal. 294, 184 P. 12, 10 A.L.R. 866 (1919), *second appeal,* 63 Cal. App. 737 (1923); *Tutelman v. Agricultural Ins. Co.,* 25 Cal. App. 3d 914, 102 Cal. Rptr. 296 (1972); *Lewis v. Agricultural Ins. Co.,* 2 Cal. App. 3d 285, 82 Cal. Rptr. 509

(1969) (surety liable where affiants had never appeared before notary). We must conclude that the failure of a notary to take the precautions mandated by Cal. Civ. Code § 1185 would give rise to liability under Cal. Gov. Code § 8214. Hence, we are convinced that, if proved, the failure of the notaries in this case to take the required care in properly ascertaining the identity of the forgers would constitute actionable negligence under California law.[2]

■■ We have held that Washington courts have the jurisdictional power to adjudicate this matter. The power to adjudicate does not, in itself, render this forum the most appropriate for litigation. As noted, all the respondents may be found in California. California law controls the potential liability of the respondents. Only the plaintiffs and possibly a few minor witnesses reside within this state.

The doctrine of forum non conveniens contemplates the discretionary declination of jurisdiction where, in the court's view, the difficulties of litigation militate for the dismissal of the action subject to a stipulation that the defendant submit to jurisdiction in a more convenient forum. *See* Restatement (Second) Conflict of Laws § 84 (1971); Weintraub, *supra* at 154-60.

In *Lansverk v. Studebaker-Packard Corp.*, 54 Wn.2d 124, 338 P.2d 747 (1959), we rejected the doctrine of forum non conveniens and aligned ourselves with the minority of states that had done likewise. Most of the states in that minority have since reversed their position and embraced

---

[2]It should be noted that Washington law exacts a similar burden of care from its notaries. In the absence of statutorily defined duties, *see* RCW 42.28.010, *et seq.*, we have imposed upon the notary the duty to take reasonable care to ascertain the identity of the individual whose signature is to be acknowledged. *Ehlers v. United States Fidelity & Guar. Co.*, 87 Wash. 662, 152 P. 518 (1915). A Washington notary is not an insurer of the identity of the affiant, *James, Inc. v. Carr*, 170 Wash. 29, 14 P.2d 1113 (1932). An action for negligence, therefore, must be predicated upon the notary's failure to exercise reasonable care in establishing the subscriber's identity. Once it has been established that an acknowledged signature is forged, the evidentiary burden shifts to the notary to establish that the proper standard of care was exercised. *Meyers v. Meyers*, 81 Wn.2d 533, 503 P.2d 59 (1972).

the forum non conveniens doctrine in some form. *See* Trautman, *Forum Non Conveniens in Washington — A Dead Issue?*, 35 Wash. L. Rev. 88 (1960).

The expanding realm of commercial relationships led us to a tacit recognition of the doctrine in *Tyee Constr. Co. v. Dulien Steel Prods., Inc.*, 62 Wn.2d 106, 116, 381 P.2d 245 (1963), wherein we included, as factors in determining whether our courts had the *power* to adjudicate, the *discretionary* considerations of the "relative convenience of the parties, . . . and the basic equities of the situation." This implicit recognition has been reinforced by the passage of our long-arm statute, RCW 4.28.185, which, as in this case, has vastly extended the jurisdiction of our courts over persons with only minimal Washington contacts.

In our opinion, therefore, it is time we forthrightly recognize the doctrine of forum non conveniens as an inherent discretionary power of the courts. Henceforth, considerations of the power to adjudicate shall be anterior to the nonjurisdictional, discretionary question of whether justice dictates dismissal under the doctrine of forum non conveniens. *But cf. State ex rel. White Lumber Sales, Inc. v. Sulmonetti*, 252 Ore. 121, 128, 448 P.2d 571 (1968) (O'Connell, J., dissenting) *evaluated by* Ehrenzweig, *From State Jurisdiction to Interstate Venue*, 50 Ore. L. Rev. 103 (1971).

On remand in the case at bar, the trial judge may determine whether the location of witnesses and parties in California and the Californian courts' expertise in their own law are compelling factors which necessitate the application of the forum non conveniens doctrine. If such is the case, he may require the respondents to stipulate that they will submit to jurisdiction in California and not plead as a defense any statute of limitations which may have lapsed since this action was commenced in Washington. *See generally* Restatement (Second) Conflict of Laws § 84, *supra*; Weintraub, *supra*.

Conversely, as we have stated, the trial court in its discretion may determine that justice is more properly served

by litigation of this matter in the Washington forum. In this event, RCW 4.28.185 (5) provides for the discretionary award of costs and attorneys' fees should they prevail. In our opinion, the potential award to defendants of the substantial defense expenses inherent in litigating in a distant forum will effectively deter any ill intentions or harassment on the part of prospective plaintiffs.

In summation, we hold that: (1) Due process does not preclude the exercise of in personam jurisdiction over nonresident notaries who have affixed their jurat to a forged signature on a document conveying immovables in Washington. This instance of Washington jurisdiction is required to maintain the integrity of the State's territorial sovereignty. (2) Jurisdiction in personam may be had over the notaries' employers and their sureties. (3) California law must apply to the alleged tortious actions of the notaries. (4) California case and statutory law mandate the requirements of Cal. Civ. Code § 1185 be met in rendering an acknowledgement. Failure to comply with § 1185 gives rise to liability under Cal. Gov. Code § 8214. (5) On remand, the trial court in its discretion may determine that this litigation is more appropriately prosecuted in California and dismiss for forum non conveniens, or it may proceed on the merits. Thus, this cause should be remanded to the Superior Court for Snohomish County for further proceedings consistent with this opinion. It is so ordered.

HALE, C.J., ROSELLINI, HUNTER, HAMILTON, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.