[No. 1284-2.  Division Two.  March 11, 1975.]

INTERNATIONAL SALES AND LEASE, INC., *Appellant*, v. SEVEN BAR FLYING SERVICE, INC., *Respondent*.

*James J. Mason*, for appellant.

*Richard J. Dolack* (of *Comfort, Dolack, Hansler, Hulscher, Rosenow & Burrows*), for respondent.

JOHNSON, J.*—This action was brought by the appellant

*Judge Bertil E. Johnson is serving as a judge pro tempore of the Court of Appeals pursuant to Laws of 1973, ch. 114.

for the collection of a check issued by the respondent in the sum of $3,024, on which the latter stopped payment. The respondent, by special appearance, moved to quash the summons and dismiss the action on the grounds that the court lacked jurisdiction under the long-arm statute, RCW 4.28.185. The court granted the motion and entered an order of dismissal. This appeal is from that order.

The facts are as follows. The respondent (Seven Bar) is a New Mexico corporation with its principal place of business in Albuquerque, and the appellant (International Sales) is a Washington corporation with its principal place of business in Tacoma. Seven Bar contracted in New Mexico to buy an aircraft from one Jack Mills, then a resident of New Mexico. The aircraft was in the possession of Tide Air, Inc., a Washington corporation, and the respondent agreed to take delivery at Tacoma Industrial Airport. As part of the consideration for the purchase, the respondent agreed to pay Tide Air for the repairs which the latter had made to the aircraft. Mills represented to the respondent that the amount owing for repairs was approximately $1,200. Seven Bar sent its pilot, armed with a blank check, to Tacoma to pick up the aircraft. On his arrival, the pilot was told by Tide Air that the amount owed by Mills was $3,024. The pilot unsuccessfully attempted to locate the president of Seven Bar Flying Service, Inc. Believing that he should return to New Mexico as soon as possible, the pilot completed the check for the amount of $3,024, received the plane from Tide Air, and flew it back to New Mexico. When Seven Bar learned of these events, it stopped payment of the check. It contends that the additional amount claimed by Tide Air represents debts owed by Mills which are unrelated to the repair of the aircraft. This contention is somewhat confirmed by the record and the admissions during argument. It is not disputed that at the time Seven Bar took possession of the aircraft, Jack Mills had clear title to it and there were no liens of record

outstanding. Tide Air, however, may have had an enforceable lien for repairs. Seven Bar offered to settle with Tide Air for $1,200; the offer was refused. Tide Air then assigned the check to the appellant, International Sales. Seven Bar does no business of any kind in Washington. The above facts set forth its only experience in this state.

The only issue is: Does the Washington court have jurisdiction over Seven Bar under RCW 4.28.185, the long-arm statute, under the facts set forth above?

RCW 4.28.185 provides, in part:

> (1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:
> (a) The transaction of any business within this state;
> (b) The commission of a tortious act within this state;
> (c) The ownership, use, or possession of any property whether real or personal situated in this state;

*Tyee Constr. Co. v. Dulien Steel Prods. Inc.*, 62 Wn.2d 106, 381 P.2d 245 (1963), the leading case in this state, considered five United States Supreme Court decisions which considered the parameters of a state's jurisdiction, to wit, *International Shoe Co. v. Washington*, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, 161 A.L.R. 1057 (1945); *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 94 L. Ed. 1154, 70 S. Ct. 927 (1950); *Perkins v. Benquet Consol. Mining Co.*, 342 U.S. 437, 96 L. Ed. 485, 72 S. Ct. 413 (1952); *McGee v. International Life Ins. Co.*, 355 U.S. 220, 2 L. Ed. 2d 223, 78 S. Ct. 199 (1957); *Hanson v. Denckla*, 357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958), and set out three criteria necessary for the assumption of jurisdiction in this state. These are:

> (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the

forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

(Footnotes omitted.) *Tyee Constr. Co. v. Dulien Steel Prods., Inc., supra* at 115.

We note that the first two elements of the *Tyee* formula are based upon the long-arm statute. The third element enumerates several nonexclusive factual considerations relative to both the due process rights of nonresident defendants and to the convenience of the forum. The third element does not necessarily express the "constitutional limits of the forum's jurisdiction." *Werner v. Werner*, 84 Wn.2d 360, 365, 526 P.2d 370 (1974).

We are convinced after reading the numerous long-arm jurisdiction cases in this state decided subsequent to *Tyee*[1] that the assumption of jurisdiction would not be improper in the instant case. Three decisions handed down subsequent to *Tyee* particularly reinforce this conclusion.

In the most recent of these, *Werner v. Werner, supra*, jurisdiction was assumed even though the nonresident de-

[1] *Nixon v. Cohn*, 62 Wn.2d 987, 385 P.2d 305 (1963); *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.*, 66 Wn.2d 469, 403 P.2d 351 (1965); *Quigley v. Spano Crane Sales & Serv., Inc.*, 70 Wn.2d 198, 422 P.2d 512 (1967); *Oliver v. American Motors Corp.*, 70 Wn.2d 875, 425 P.2d 647 (1967); *Griffiths & Sprague Stevedoring Co. v. Bayly, Martin & Fay, Inc.*, 71 Wn.2d 679, 430 P.2d 600 (1967); *Callahan v. Keystone Fireworks Mfg. Co.*, 72 Wn.2d 823, 435 P.2d 626 (1967); *Thiry v. Atlantic Monthly Co.*, 74 Wn.2d 679, 445 P.2d 1012 (1968); *Bowen v. Bateman*, 76 Wn.2d 567, 458 P.2d 269 (1969); *Harrison v. Puga*, 4 Wn. App. 52, 480 P.2d 247, 46 A.L.R.3d 415 (1971); *Deutsch v. West Coast Mach. Co.*, 80 Wn.2d 707, 497 P.2d 1311 (1972); *Omstead v. Brader Heaters, Inc.*, 80 Wn.2d 720, 497 P.2d 1310 (1972); *State v. Reader's Digest Ass'n*, 81 Wn.2d 259, 501 P.2d 290 (1972); *Smith v. York Food Mach. Co.*, 81 Wn.2d 719, 504 P.2d 782 (1972); *Handley v. Franchise Marketing Servs., Inc.*, 9 Wn. App. 40, 510 P.2d 673 (1973); *Puget Sound Bulb Exch. v. Metal Bldgs. Insulation, Inc.*, 9 Wn. App. 284, 513 P.2d 102 (1973); *Ace Novelty Co. v. M.W. Kasch Co.*, 82 Wn.2d 145, 508 P.2d 1365 (1973); *Werner v. Werner*, 84 Wn.2d 360, 526 P.2d 370 (1974).

fendants' connection within this state was exceedingly tenuous. The defendants were notaries public residing in and licensed by the State of California. They were charged by the plaintiffs with having negligently acknowledged a deed to real property located in Washington. They had no other connection with this state.

*Quigley v. Spano Crane Sales & Serv., Inc.*, 70 Wn.2d 198, 422 P.2d 512 (1967) involved an action sounding in both tort and warranty against a California manufacturer which had made several business contacts in this state. The Supreme Court found that jurisdiction could properly be maintained, and further stated that the statutory phrase "[t]he transaction of any business within this state . . ." means that even a solitary business deal transacted in this state is sufficient to vest jurisdiction.

■ In *Griffiths & Sprague Stevedoring Co. v. Bayly, Martin & Fay, Inc.*, 71 Wn.2d 679, 430 P.2d 600 (1967) a California insurance broker persuaded a Washington insurance broker, by telephone and correspondence, to procure coverage of a California risk. The California broker had no other contacts within this state, but he was held subject to its jurisdiction in a suit over the responsibility for insurance premiums. Of special significance in that case (and relevant here) is the court's statement that jurisdiction may stem from "the initiation of a transaction outside the state in contemplation that some phase of it will take place in the forum state . . . " *Griffiths & Sprague Stevedoring Co. v. Bayly, Martin & Fay, Inc.*, supra at 684, citing *Nixon v. Cohn*, 62 Wn.2d 987, 385 P.2d 305 (1963).

These cases have persuaded us that the contact-producing activity within this state made by a nonresident has to be neither extensive nor physical, so long as the suit arises from at least some of those and the impact in this state of the nonresident's activity is foreseeable.[2]

There is no question that the facts in the instant case meet the requirements of the first two elements of the *Tyee*

---

[2]*See* Orland & Fischnaller, *Jurisdiction Salad: Washington Style*, 9 Gonzaga L. Rev. 1, 20 (1973).

formula. Further, a comparison of this case with those discussed in the preceding paragraphs in which jurisdiction was assumed, reveals no significant differences. There was substance to the contacts which Seven Bar had within this state. It completed a transaction in this state by passing a check. It sent an agent to Washington to consummate that transaction. Its activity in this state was not at all unwitting. Washington law will apply to certain significant aspects of this suit. Hence we conclude that the assumption of jurisdiction by a Washington court will not violate the due process rights of the respondent.

■ One further consideration is necessary, however, to the final disposition of this case. The Supreme Court of this state recently embraced the doctrine of forum non conveniens. *Werner v. Werner, supra.* Once jurisdiction is assumed, a court, exercising its inherent discretionary powers, may decline to hear the case because of the inconvenience of the forum. Considerations attendant to the making of this determination are like those expressed in the third phase of the *Tyee* formula. The doctrine of forum non conveniens does not, however, involve constitutional considerations, and it has the advantage of permitting a court which has assumed jurisdiction to attach conditions to the removal of the cause to a more convenient forum.

This case appears to be an appropriate one for the utilization of the doctrine of forum non conveniens. The primary reason leading to this conclusion is that maintenance of this action in New Mexico would avoid multiple litigation. There Jack Mills could be impleaded by the respondent as a third-party defendant. Also, the respondent's witnesses reside in New Mexico. And, as an equitable matter, the situation weighs more heavily in favor of the respondent's forum preference. However, we will only authorize the removal of this case to a New Mexico court on the condition that the respondent: (1) pays plaintiff, International Sales, $1,264.06 on account; (2) pays plaintiff reasonable attorney's fees expended to date in this court and in the superior court, said fees to be fixed by the trial court;

(3) pays said $1,264.06 and fees as fixed within 60 days after the filing of the formal order; and (4) agrees to reimburse the plaintiff for reasonable attorney's fees and costs in New Mexico, should the latter recover more than $1,264.06 in this suit.

Should the respondent not agree to these conditions, the case will remain in Washington for trial.

We reverse and remand for a disposition of this action consistent with this opinion.

ARMSTRONG, C.J., and PETRIE, J., concur.

Petition for rehearing denied April 24, 1975.