[No. 12059-7-III.   Division Three.   February 3, 1993.]

J.E. LYNCH, *Appellant,* v. RONALD E. PACK, *Respondent.*

*William D. Symmes, Brian T. Rekofke,* and *Witherspoon, Kelley, Davenport & Toole, P.S.; Murray G. Stromberg,* for appellant.

*John G. Layman, Mark W. Hendricksen,* and *Layman, Loft, Arpin & White,* for respondent.

SWEENEY, J. — J.E. Lynch appeals the dismissal of his suit against Ronald E. Pack for misrepresentation and breach of certain warranties included in a stock purchase agreement. The dismissal was based on forum non conveniens. Finding no abuse of discretion, we affirm.

## FACTS

In the spring of 1985, Mr. Pack's accountant, Michael Romine, approached Mr. Lynch, a Spokane, Washington, resident, in Spokane, and asked Mr. Lynch if he was interested in buying stock in two Montana corporations, Pack & Company

and Pack Concrete, Inc. (Corporations). The stock was wholly owned by Mr. Pack, who was a Montana resident. Mr. Pack denies soliciting Mr. Lynch as a buyer. Mr. Romine subsequently assisted Mr. Pack in negotiating the sale of stock. Mr. Lynch made at least one trip to Montana to negotiate the sale; Mr. Pack admits being in Spokane on three occasions and discussing the sale. Mr. Lynch's son, James Lynch, also made trips to Montana to negotiate the acquisition.

On March 4, 1986, in Spokane, Mr. Lynch and Mr. Pack executed a stock purchase agreement (Agreement) by which Mr. Lynch purchased 51 percent of Mr. Pack's stock in the Corporations. The remaining 49 percent of the stock in the Corporations was escrowed in Spokane. The Corporations retained the right to redeem the remaining stock from Mr. Pack on or before March 4, 1991. The Agreement required Mr. Lynch to purchase the remaining stock if the Corporations did not redeem.

The Agreement was "governed by, construed and interpreted according to" Montana law. Mr. Pack agreed to indemnify Mr. Lynch for misrepresentations and breach of warranties. A side agreement, signed by Mr. Lynch and Mr. Pack in their individual capacities, provided, among other things, that the Corporations would employ Mr. Pack.

Following the sale, James Lynch became president of the Corporations. In March 1986, Daniel Harper of McFarland & Alton, Spokane, became the accountant for the Corporations and assumed responsibility for the preparation of annual financial statements and tax returns. On February 27, 1991, the Corporations notified Mr. Pack of their intent to redeem the remaining 49 percent of his stock, minus offsets for misrepresentations and breach of warranties.

## PROCEDURAL HISTORY

On April 12, 1991, Mr. Lynch filed suit against Mr. Pack, in Spokane County, Washington, for misrepresentations and breach of warranties. He also sought a declaratory judgment regarding offsets. He claimed that Mr. Pack had overstated

income and accounts receivable, failed to reveal litigation pending against the Corporations, and failed to pay as promised on an account (the Bitney account).

On May 24, Mr. Pack filed suit against the Corporations, in Montana, for breach of contract and to recover moneys claimed due pursuant to the Agreement and the side agreement.

On June 28, Mr. Pack filed a motion in the Spokane litigation: to quash service of process; to dismiss Mr. Lynch's complaint for lack of jurisdiction, for failure to name indispensable parties (the Corporations); and to dismiss for forum non conveniens. On July 19, the court entered an order concluding that it had jurisdiction and that venue was proper, but dismissing the case based on forum non conveniens. The dismissal was subject to Mr. Pack paying the costs for Mr. Harper to travel to Montana for trial.

On July 29, Mr. Lynch moved for reconsideration of the dismissal and submitted additional affidavits in support of his motion. Mr. Pack objected to the court considering the affidavits, but he also submitted an additional affidavit. The court considered all of the affidavits, but denied the motion. This appeal followed.

## DISCUSSION
### A. Issue and Standard of Review

■ The dispositive issue is simply whether the trial court abused its discretion in dismissing Mr. Lynch's complaint based on forum non conveniens. We reverse only if the dismissal is manifestly unfair, unreasonable, or untenable. *Myers v. Boeing Co.*, 115 Wn.2d 123, 128, 794 P.2d 1272 (1990); *Coggle v. Snow*, 56 Wn. App. 499, 507, 784 P.2d 554 (1990).

### B. Forum Non Conveniens

■ The doctrine of forum non conveniens was first recognized in this state in *Werner v. Werner*, 84 Wn.2d 360, 371, 526 P.2d 370 (1974). Application of the doctrine requires the balancing of a number of private and public interest factors.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 91 L. Ed. 1055, 67 S. Ct. 839 (1947); *Johnson v. Spider Staging Corp.*, 87 Wn.2d 577, 555 P.2d 997 (1976). The private interest factors are:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises . . .; and all other practical problems that make trial of a case easy, expeditious and inexpensive.
> . . . .
> . . . questions as to the enforcibility [*sic*] of a judgment if one is obtained.

*Myers v. Boeing Co.*, *supra* at 128 (quoting *Gulf Oil*, at 508). The public interest factors are:

> Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. . . . There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Myers*, at 129 (quoting *Gulf Oil*, at 508-09). The court is required to balance the factors, "[b]ut unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Myers*, at 128-29 (quoting *Gulf Oil*, at 508). This is Mr. Lynch's contention.

■ Relying on *Nixon v. Cohn*, 62 Wn.2d 987, 385 P.2d 305 (1963), Mr. Lynch also contends that the practical effect of the dismissal is to deprive him of a valuable right conferred by Washington's long-arm statute (RCW 4.28.185). The argument is unpersuasive. Washington adopted the doctrine of forum non conveniens partially in response to passage of the long-arm statute, which "has vastly extended the jurisdiction of our courts over persons with only minimal Washington contacts." *Werner*, at 371. Basic equity required the court to have discretionary power to dismiss due to forum non conveniens even though jurisdiction existed. *Werner*, at 371. Moreover, *Nixon* is distinguishable. There, the issue was

jurisdiction, not forum non conveniens. Although the court considered the relative convenience of the parties, it did so in determining whether assumption of jurisdiction violated due process. *Nixon*, at 993.

The affidavits, in support of and in opposition to Mr. Pack's forum non conveniens motion, address the various private and public factors delineated in *Myers*, but they are conflicting. We review the assertions of the parties in light of the *Myers* factors.[1]

a. Private Interest Factors.

(1) *Access to proof.* Mr. Lynch contends that the most important witnesses will be from Spokane: (1) the Corporations' accountant since the sale, Mr. Harper; (2) Mr. Romine, who he alleges represented Mr. Pack; and (3) possibly one or more attorneys who represented Mr. Lynch during the negotiations. Mr. Lynch also discounts Mr. Pack's assertion that numerous other witnesses from Montana will be required to defend the claims of misrepresentation and breach of warranties.

Mr. Pack lists numerous individuals or groups of individuals who reside in Montana and may be required to testify, including: (1) the certified public accountant and Corporations' bookkeepers in Montana, who were instrumental in preparing the financial statements which Mr. Lynch now claims are misleading; (2) the two attorneys who represented Mr. Pack during the negotiations; (3) James Lynch, the accounts receivable obligors, and construction supervisors — all of whom may testify regarding efforts made to collect accounts receivable (Mr. Lynch claims the receivables were misrepresented); (4) Mr. Bitney and the Corporations' employees who can testify regarding agreements between Mr. Bitney and Mr. Pack, and Mr. Pack and Mr. Lynch, relating to Mr. Lynch's right of offset on that account; (5)

---

[1]Because we affirm, we do not reach the issue raised by Mr. Pack — consideration of the affidavits submitted by both parties on the motion for reconsideration. The affidavits did not significantly change the evidence before the court. With or without consideration of the affidavits, the dismissal was not an abuse of discretion.

attorneys representing the Corporations in litigation pending in federal court at the time of the sale; and (6) general employees of the Corporations during the pre- and postsale period. Mr. Pack also argues that most of the necessary documents are in Montana. James Lynch, however, has agreed to make the records available in Washington.

Mr. Lynch and Mr. Pack disagree on the status of a number of accounts receivable. For example, Mr. Pack maintained initially that almost all accounts receivable were owed by Montana residents or companies doing business in Montana. Mr. Lynch alleges that the largest accounts receivable were not owed by Montana residents. Mr. Pack admits that the home offices of the obligors may not be in Montana, but contends that the relevant witnesses reside in Montana, and the work was substantially performed in Montana. Mr. Lynch's Spokane accountant, Mr. Harper, states that individual debtors will not be required as witnesses. Deficiencies will be shown by applying accounting principles. Misrepresentations as to income are also merely accounting issues.

A suit pending against Pack & Company in federal district court in Montana is also a basis for Mr. Lynch's misrepresentation claim. Mr. Lynch maintains, however, that the judgment will be for a sum certain and, therefore, no witnesses will be needed. Mr. Pack asserts that the attorneys will be needed to describe the nature of the litigation and perhaps to establish that this was not litigation covered by Mr. Pack's warranty.

The strategy and evidence presented by Mr. Lynch will dictate the defense strategy of Mr. Pack. That defense strategy, in turn, will dictate the need for defense witnesses.

(2) *Need for compulsory process.* Mr. Lynch asserts that Mr. Pack has not shown that there are any Montana witnesses who will refuse to voluntarily testify. He argues that even if they did refuse, their attendance at depositions could be compelled. Mont. R. Civ. Proc. 28(d). Moreover, James Lynch has indicated that he will testify voluntarily.

Mr. Pack counters that it is cumbersome and unfair to require him to proceed first in Washington and then in Mon-

tana to obtain subpoenas for depositions, documents and records. He suggests that corporate employees who worked for both Mr. Pack and now James Lynch may be unwilling witnesses. Mr. Pack contends that although depositions of unwilling witnesses can be taken and read, this process is expensive and does not afford him a fair trial.

(3) *Cost for witnesses.* Mr. Lynch argues that all but one of his witnesses are Spokane residents and at least one of Mr. Pack's witnesses is from Spokane. He asserts that if out-of-state accounts receivable obligors are needed as witnesses, it will be less expensive to transport them to Spokane than to Kalispell, Montana. Mr. Pack counters that the vast majority of witnesses are believed to be Montana residents and to transport them from Kalispell to Spokane will cost $330 round trip.

(4) *Need to view premises.* Neither party asserts that this factor is applicable in this case.

(5) *Enforceability of judgment.* Mr. Pack asserts that Mr. Lynch is seeking monetary damages and that Mr. Pack has no property in Washington to satisfy a judgment. Mr. Lynch points out that Mr. Pack's remaining stock in the Corporations is escrowed in Spokane.

(6) *Practical problems.* Mr. Pack identifies two public interest factors under practical problems which we discuss under public interest factors.

b. Public Interest Factors.

(1) *Court congestion; required jury duty; local interest.* When a court and the jurors have no relation to a cause of action, it is burdensome for litigation to be tried in that forum. There is also a local interest in having local controversies decided at home. *Myers,* at 129. Mr. Pack contends that the burden of trying the case in Spokane is greater because the cause of action is related to the sale of two Montana corporations by a Montana resident. Mr. Lynch counters that Washington courts should hear the case because the individual wronged is a Spokane resident.

Although the sale documents were signed in Spokane, the subject matter of the transactions is the Montana corpora-

tions. The value of the Corporations' assets and liabilities is at issue. The Montana community may well have more of an interest in the outcome of litigation affecting two corporations physically present there than the Spokane community has in a securities transaction involving out-of-state corporations.

(2) *Unfamiliar law.* The Agreement requires that Montana law govern. Mr. Pack asserts that a Spokane court would have to determine Montana law to decide issues of contract interpretation, misrepresentation, oral contract standards, and local accounting and collection standards. Mr. Lynch argues that this is not difficult for a Washington court, and further there is no proof that Montana law is different from Washington law.

Mr. Lynch asserts that the application of foreign law does not give rise to the same problems presented in *Myers.* There, Washington courts would have been required to translate and interpret Japanese law. *Myers*, at 129-30. The questions of law presented here are not as difficult as those presented in *Myers.* Nevertheless, Montana courts are likely to be more familiar with the interpretation and application of Montana law than Washington courts.

We agree with Mr. Lynch, the facts here are not as compelling as those presented in *Myers* or *Wolf v. Boeing Co.*, 61 Wn. App. 316, 810 P.2d 943 (crash of a Boeing 727 operated by Mexicana Airlines in Mexico), *review denied*, 117 Wn.2d 1020 (1991). Nevertheless, many of the factors found significant in *Myers* militate in favor of a Montana forum. Mr. Pack has asserted a need for a more significant number of witnesses from Montana than Mr. Lynch has from Spokane. If the assertions are correct, it will be more costly to bring witnesses to Spokane. There is, at least, a question whether some may be unwilling witnesses whose attendance could not be compelled. The two corporations are Montana corporations, and the local interest in resolution of litigation is likely to be higher in Montana.[2]

---

[2]Forum non conveniens dismissals have been upheld in three other cases, none of which is instructive here because of factual differences: *In re Marriage of*

The balancing required of the court here is not subject to the same mathematical certainty as an accountant's financial statements. The court must consider the evidence presented and make what is necessarily a subjective judgment.. Considering the evidence before the trial court, we are unable to say it abused its discretion and therefore affirm the dismissal.

SHIELDS, C.J., and MUNSON, J., concur.

---

*Dunkley*, 89 Wn.2d 777, 783-84, 575 P.2d 1071 (1978) (dismissal in child custody dispute upheld because most of witnesses were in another state, all litigation to date had been in that state, and mother who had child custody was in the other state); *In re Marriage of Morrison*, 26 Wn. App. 571, 575, 613 P.2d 557 (1980) (in dispute over father's contributions to trust accounts for children, dismissal was upheld because ex-husband was in another state, payments were made through another state court system, and mother now lived in a third state); *International Sales & Lease, Inc. v. Seven Bar Flying Serv., Inc.*, 12 Wn. App. 894, 899, 533 P.2d 445 (1975) (in an action to collect payment for a check of a non-Washington resident, pre-*Johnson* case upheld dismissal based on desire to avoid multiple litigations, because witnesses were in another state, and because equity weighed toward other forum).

A dismissal based on forum non conveniens was reversed in a wrongful death action, brought in Washington, against a Washington corporation that built scaffolds which contributed to the death of a Kansas man in Kansas. *Johnson v. Spider Staging Corp.*, *supra*. But, there the court found:

> The factors . . . do not strongly favor the respondents-defendants. For example, all of the evidence which pertains to the manufacturing and marketing of the scaffold is in Washington State. Respondents are Washington corporations, and all of their principal officers reside in King County. Both of the engineers who designed the scaffold live in King County. The two principal witnesses from Kansas stated in affidavits that they willingly would appear in Washington. Also, appellant will bring the scaffold to Washington and give respondents an opportunity to examine it. The trial court therefore should not have disturbed appellant's choice of forum.

*Johnson*, at 580.