# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

MARK AND JULIE DAVISCOURT,
a husband and wife and their marital
community,

           Appellants,

          v.

QUALITY LOAN SERVICES†
CORPORATION OF WASHINGTON,
a Washington Corporation,

          Respondent,

MCCARTHY HOLTHUS, LLP, a
California Limited Liability Partnership;
BANK OF AMERICA, N.A., a national
association,

          Defendants,

SELECT PORTFOLIO SERVICING,
INC., a foreign corporation; BANK OF
NEW YORK MELLON FKA BANK OF
NEW YORK, a national association;
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,
a foreign corporation; MERSCORP
HOLDINGS, INC., a foreign corporation;
ALTERNATIVE LOAN TRUST
2005-62, MORTGAGE PASS-
THROUGH CERTIFICATS SERIES
2005-62; JOHN DOES 1-99,

          Respondents.

No. 74979-0-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: August 21, 2017

TRICKEY, A.C.J. — Mark and Julie Daviscourt appeal the dismissal, on summary judgment, of their negligence, outrage, and civil conspiracy claims against various defendants who initiated a nonjudicial foreclosure proceeding against them after they defaulted on their loan. Underlying most of the

† It appears the case caption's reference to "Quality Loan Services Corporation of Washington" is a typographical error. All other references in the record refer to "Quality Loan Service Corporation of Washington."

Daviscourts' claims are their assertions that the defendants recorded documents, including a deed of trust and promissory note, containing false information about the identities of the lender, beneficiary, and trustee, and that Quality Loan Service Corporation of Washington (Quality) failed to maintain a physical address. Because the Daviscourts have failed to establish that the defendants violated any duty to them when they recorded the documents, that the defendants employed unlawful means, and that the defendants' conduct was outrageous, we affirm.

The Daviscourts also claim that the defendants violated the Consumer Protection Act, chapter 19.86 RCW (CPA), by violating the deeds of trust act, chapter 61.24 RCW (DTA). Because the Daviscourts have not shown that any violation by Quality constituted an unfair or deceptive practice, or that any of the other defendants violated the DTA, we also affirm the dismissal of their CPA claims.

## FACTS

In 2005, the Daviscourts executed a promissory note in the amount of $875,000 in favor of America's Wholesale Lender (AWL). They secured the note with a deed of trust encumbering their home. The deed of trust identified AWL as the lender, and stated that the lender was a corporation under the laws of New York. The deed of trust identified Transnation as the trustee and Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary. The deed of trust also contained an instruction to return the document to Countrywide Home Loans (Countrywide) after recording.

In 2009, the Daviscourts sued Countrywide and other defendants on other grounds related to a loan modification. The lawsuit identified Countrywide as the lender for the 2005 loan.

In September 2011, MERS purported to assign its beneficial interest in the deed of trust to the Bank of New York Mellon f/k/a Bank of New York (BONY).

In September 2013, BONY, acting as beneficiary, recorded an appointment of successor trustee, appointing Quality as the trustee. An officer of Select Portfolio Servicing, Inc. (SPS), acting as attorney in fact for BONY, signed the appointment. The appointment listed an address in Poulsbo, Washington, for Quality.

Also in September 2013, Quality sent the Daviscourts a notice of default (NOD). The NOD identified SPS as the loan servicer, and BONY as the owner of the note. It was signed by Quality as the trustee. The NOD listed the same Poulsbo, Washington, address for Quality as the appointment had.

Around that time, the Daviscourts attempted to modify their loan with SPS. Mark Daviscourt included letters of hardship with his requests to modify the loan. A sample letter, from his physician, addressed "To Whom It May Concern" and dated January 23, 2007, explained that Mark suffered from depression and that his "coping skills and executive functioning decline rapidly when under stress, or exposed to situational changes."[1] The letters warned that "a seizure of [Mark's] home would likely have a significantly adverse affect [sic] on [Mark's] future medical condition."[2] Mark sent the same letters to Quality.

---

[1] Clerk's Papers (CP) at 307.
[2] CP at 307.

Receiving the NOD distressed Mark. Mark decided to commit suicide because he felt that the shame of losing his home was unbearable. Concerned about the pain his death would cause his family, he did not follow through with the plan.

In February 2014, Quality sent the Daviscourts a notice of trustee's sale because they had defaulted on their obligation. The notice listed a physical address for Quality in Seattle, Washington. Mark made several attempts to visit Quality at its Seattle office but, although locating the building and seeing a sign for Quality, was not able to enter the office or reach anyone through the call box. Following his unsuccessful visits to Quality, Mark again considered suicide.

In March 2014, Quality discontinued the sale.

In July 2014, the Daviscourts sued MERS, BONY, SPS, Quality, and others for negligence, outrage, civil conspiracy, and violation of the CPA. In late December 2015, the court granted Quality's motion for summary judgment. In March 2016, the court granted summary judgment in favor of the remaining defendants (the SPS defendants) and dismissed the Daviscourts' remaining claims.

The Daviscourts appeal.

ANALYSIS

Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." CR 56(c). The affidavits "shall set forth such facts as would be admissible in evidence." CR 56(e). Because witnesses' opinions on legal issues are not admissible, neither a trial court nor an appellate court may consider them when deciding whether to grant summary judgment. King County Fire Prot. Dists. v. Hous. Auth. of King County, 123 Wn.2d 819, 826, 872 P.2d 516 (1994).

The court must consider the facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Appellate courts review summary judgment decisions de novo. Keck, 184 Wn.2d at 370.

Throughout their brief, the Daviscourts rely on the affidavit of their expert witness, Marie McDonnell, as proof that various recorded documents are false or void or that various defendants lacked legal authority to take certain actions. The Daviscourts note that neither McDonnell's "expertise nor opinions based upon findings were challenged in the trial court."[3] The defendants argue that the trial court properly disregarded McDonnell's legal conclusions. We agree with the defendants and disregard all of McDonell's legal conclusions.

## Negligence

The Daviscourts argue that the trial court erred by dismissing their negligence claims on summary judgment because there were at least genuine issues of material fact for each element of their claims. We disagree because the Daviscourts have not shown that the defendants had a duty to protect them from

---

[3] Appellants' Opening Br. at 10.

5

the type of harm alleged.

The tort of negligence has four elements: duty, breach, causation, and damages. Schooley v. Pinch's Deli Mkt., Inc., 134 Wn.2d 468, 474, 951 P.2d 749 (1998). "The existence of a duty may be predicated upon statutory provisions or on common law principles." Degel v. Majestic Mobile Manor, Inc., 129 Wn.2d 43, 49, 914 P.2d 728 (1996). Under the common law, actors "have a duty to exercise reasonable care to avoid the foreseeable consequences of their acts." Washburn v. City of Federal Way, 178 Wn.2d 732, 757, 310 P.3d 1275 (2013) (citing RESTATEMENT (SECOND) OF TORTS § 281 cmts. c, d (1965)). Actors must also "avoid exposing another to harm from the foreseeable conduct of a third party." Washburn, 178 Wn.2d at 757 (citing RESTATEMENT § 302). "The existence of a legal duty is a question of law for the court," but the scope of a duty is ordinarily a question for the trier of fact. McKown v. Simon Prop. Grp., Inc., 182 Wn.2d 752, 762, 344 P.3d 661 (2015).

Here, the Daviscourts argue that the defendants have a duty not to record false documents. The Daviscourts cite a warning in Werner v. Werner, that corruption of the title registration system could cause "substantial economic loss to the parties involved." 84 Wn.2d 360, 367, 526 P.2d 370 (1974). They also point out that, in Meyers v. Meyers, the court held that a notary who negligently performed her duties could be liable in tort. 81 Wn.2d 533, 534-36, 503 P.2d 59 (1972).

But, in both Werner and Meyers, the court was addressing the liability of notaries for allegedly negligently performing specific statutorily-prescribed duties.

6

Werner, 84 Wn.2d at 361, 368-69 (applying California law to determine the notary's duties and liability and also holding that Washington could exercise personal jurisdiction over a non-resident notary); Meyers, 81 Wn.2d at 535-36 (citing former RCW 64.08.050 (1987)). In both cases, the defendant notaries acknowledged deeds signed by people who were not who they claimed to be. Werner, 84 Wn.2d at 361; Meyers, 81 Wn.2d. at 534-35. And, in both cases, the forged deeds were used to convey the property away from the real owners. Werner, 84 Wn.2d at 362; Meyers, 81 Wn.2d. at 534-35. In those cases, it is easy to see why the notaries would owe their statutory duties to the property owners' whose identities they had allegedly failed to confirm.

By contrast, the Daviscourts have not shown why the defendants owe their duty to not record false information specifically to them. The traditional purpose of a recording statute is to protect subsequent purchasers from secret conveyances and encumbrances. See 18 WASHINGTON PRACTICE REAL ESTATE: TRANSACTIONS § 14.5, at 126-27 (2d ed. 2004 & Supp. 2017); 1 JOYCE PALOMAR, PATTON AND PALOMAR ON LAND TITLES § 12, at 57-58 (3d ed. 2003). Therefore, it is more likely that the duty stemming from recording documents would be owed to subsequent purchasers, not the original parties to a transaction, like the Daviscourts.

It is also clear from the Daviscourts' theory of negligence that the recording of documents is only tangentially related to their claim. All the injuries the Daviscourts suffered were at the hands of Quality, for allegedly failing to maintain its physical location,[4] or Countrywide, for listing AWL as a New York corporation

---

[4] The Daviscourts did not argue that Quality was *negligent* for failing to maintain its physical location in their opening brief.

on the note and deed of trust, even though it, allegedly, did not exist.[5] The Daviscourts argue that recording documents containing false statements caused confusion, which Mark believed he had to visit Quality in person in order to dispel. Mark's attempts to find Quality's physical location were unsuccessful and traumatic, causing him great emotional distress. And Mark's apparent need to clear up the confusion also led to the discovery that AWL did not exist in 2005, which caused him to have a psychological breakdown.

The Daviscourts have not shown that a duty exists under these circumstances.[6] Thus, the trial court did not err by granting the defendants' motions for summary judgment on the Daviscourts' negligence claims.

### Outrage[7]

The Daviscourts argue that the defendants acted outrageously by pursuing

---

[5] In his declaration, Mark claims that several documents provided by SPS appeared forged. The Daviscourts repeat this claim in the facts section of their opening brief. This alleged forgery also caused him distress. It does not appear that the Daviscourts' negligence claim includes any alleged forgery.

Regardless, the Daviscourts would have had to specifically plead any allegation of forgery in their complaint. RCW 62A.3-308(a). The SPS defendants argued in their reply in support of their motion for summary judgment that the Daviscourts had not satisfied that pleading standard. As appellants, the Daviscourts have the burden of providing a record sufficient for review. See Story v. Shelter Bay Co., 52 Wn. App. 334, 345, 760 P.2d 368 (1988). They do not appear to have designated the complaint for review.

[6] In their reply brief, the Daviscourts assert that they can "bootstrap their contentions that [the defendants] violated" several specific "statutes into their assertions of negligence." Appellants' Reply Br. at 8. We do not consider this argument or any new theories of negligence the Daviscourts raised in their reply brief, because they were raised too late. See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

[7] Relying on Vawter v. Quality Loan Service Corp. of Washington, the SPS defendants argue that the Daviscourts' outrage claim is barred by the economic loss rule. 707 F. Supp. 2d 1115, 1128 (W.D. Wash. 2010). But Washington has replaced the "economic loss rule" with the "independent duty doctrine," and the defendants do not offer any argument to show that the Daviscourts' outrage claim would be barred under the independent duty doctrine. See Hendrickson v. Tender Care Animal Hosp. Corp., 176 Wn. App. 757, 768-71, 312 P.3d 52 (2013).

8

a nonjudicial foreclosure based on an "arguably void deed of trust" when they knew that Mark was particularly susceptible to emotional distress.[8] The Daviscourts also argue that the defendants' recording of documents containing falsities, Quality's failure to maintain a physical location, and Quality's discontinuance of the trustee's sale without notice to the Daviscourts all constitute outrageous and extreme conduct. We disagree.

"The tort of outrage requires the proof of three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress." Kloepfel v. Bokor, 149 Wn.2d 192, 195, 66 P.3d 630 (2003). The "first element of the test goes to the jury only after the court 'determine[s] if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability.'" Robel v. Roundup Corp., 148 Wn.2d 35, 51, 59 P.3d 611 (2002) (alteration in original) (quoting Dicomes v. State, 113 Wn.2d 612, 630, 782 P.2d 1002 (1989)). "Liability exists 'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Grimsby v. Samson, 85 Wn.2d 52, 59, 530 P.2d 291 (1975) (emphasis omitted) (quoting RESTATEMENT (SECOND) TORTS § 46, cmt. d).

*Void Deed of Trust and Note*

We address first the Daviscourts' argument that the defendants' conduct was outrageous because the defendants attempted to nonjudicially foreclose on

---

[8] Appellants' Opening Br. at 26.

9

the Daviscourts' house based on a deed of trust and note that were "arguably" or "potentially" void.[9] The Daviscourts allege that the note and deed of trust are void because both documents listed AWL as the lender and AWL did not exist in 2005. Because AWL was a known trade name for Countrywide, we disagree.

AWL is Countrywide's assumed business name. Dawson v. Bank of New York Mellon, 3:16-CV-01427-HZ, 2016 WL 7217626, at *3 (D. Or. Dec. 13, 2016) (holding several courts have concluded that "the fact that AWL is Countrywide's assumed business name cannot be disputed"); see also Tyshkevich v. Wells Fargo Bank, N.A., 215CV2010JAMACPS, 2016 WL 193666, at *9-10 (E.D. Cal. Jan. 15, 2016), report and recommendation adopted, 2016 WL 1162687 (E.D. Cal. Mar. 24, 2016).

As the Daviscourts point out, the defendants have not proved that AWL was Countrywide's "legitimate trade name in Washington" in 2005.[10] But, even if Countrywide failed to register AWL as a trade name, it does not follow that the deed of trust or promissory note are void or that the documents contained falsities. A person's failure to register the trade name prevents the person from being able to file a lawsuit in the assumed name, but does not "impair the validity of any contract or act of such person or persons and shall not prevent such person or persons from defending any suit." RCW 19.80.040. Moreover, the Daviscourts' lawsuit against Countrywide in 2009 suggests they were aware of AWL's status as Countrywide's assumed business name long before the events giving rise to their current lawsuit occurred.

---

[9] Appellants' Opening Br. at 26.
[10] Appellants' Reply Br. at 5 n.5.

Accordingly, we reject the Daviscourts' argument that the defendants behaved outrageously by pursuing a nonjudicial foreclosure. Similarly, we reject any of the Daviscourts' other arguments that rely on their allegation that the recorded documents contained false information because they listed AWL as the original lender.

*Falsities*

It is not clear exactly which false statements the Daviscourts are referring to at this point, but we assume the Daviscourts are referring to (1) statements that AWL, rather than Countrywide, was the original lender; (2) statements that MERS is or was a beneficiary; and (3) statements that MERS assigned its interest to BONY.

(1) AWL & Countrywide

As discussed above, it was not false to list AWL as the original lender. Thus, none of the defendants behaved outrageously by recording documents that listed AWL as the lender.

(2) MERS as Beneficiary

Under Bain v. Metropolitan Mortgage Group, Inc., MERS is not the beneficiary of a deed of trust when it does not have physical possession of the promissory note. See 175 Wn.2d 83, 99, 285 P.3d 34 (2012). Characterizing MERS as the beneficiary has the capacity to deceive. Bain, 175 Wn.2d at 117. But, absent a showing that this characterization caused damages, the characterization of MERS as the beneficiary is immaterial. Bavand v. OneWest Bank, 196 Wn. App. 813, 843, 385 P.3d 233 (2016).

11

Here, in 2005, the parties executed the deed of trust, designating MERS as the beneficiary. In 2011, MERS purported to assign its interest to BONY. Given that these events occurred before the Supreme Court's 2012 decision in Bain, and that, even now, the fact that MERS is designated as a beneficiary is usually immaterial, we conclude that it was not outrageous for the parties to record or serve documents stating that MERS is a beneficiary.

(3) BONY as Beneficiary

It was not outrageous for any of the parties to list BONY as the beneficiary on documents or record a document on behalf of BONY purporting to appoint Quality as a trustee, because those statements are not false. BONY is the beneficiary because it is the holder of the note and the deed of trust follows the note.

The Daviscourts have two main objections to the defendants' argument that BONY is the beneficiary because it holds the note. First, they argue that the note is not a negotiable instrument because it is subject to negative amortization. It appears that the Daviscourts are arguing that, because the note was not a negotiable instrument it fell outside the Uniform Commercial Code, Title 62A RCW (UCC), and, therefore, BONY would need to be able to demonstrate valid assignments and a chain of title in order to enforce the note.

The beneficiary is "the holder of the instrument or document evidencing the obligations secured by the deed of trust, excluding persons holding the same as security for a different obligation." RCW 61.24.005(2). "Under the UCC, the 'holder' of the note is '[t]he person in possession of a negotiable instrument that is

payable either to bearer or to an identified person that is the person in possession.'" Bucci v. Nw. Tr. Servs., Inc., 197 Wn. App. 318, 328, 387 P.3d 1139 (2016) (alteration in original) (quoting RCW 62A.1-201(b)(21)(A)), review denied, 188 Wn.2d 1012, 394 P.3d 1011 (2017). A negotiable instrument is "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order." RCW 62A.3-104(a). "[N]egotiability exists if the fixed amount can be determined from the face of the instrument, except for amounts of interest, for which reference to information not contained in the note is allowable." Bucci, 197 Wn. App. at 330.

Here, the Daviscourts argue that their note is not a negotiable instrument because the possibility of negative amortization means that the principal amount is subject to change.[11] This court recently rejected an argument identical to the Daviscourts' in Bucci v. Northwest Trustee Services. 197 Wn. App. at 328-32. There, the court held that, despite the possibility of negative amortization, the note was a negotiable instrument under the UCC. Bucci, 197 Wn. App. at 331-32. Bucci controls. The note is a negotiable instrument. Therefore, BONY is the holder of the note.

Second, they argue that BONY cannot be the beneficiary because the defendants failed to prove that BONY was not holding the note as security for a different obligation. The Daviscourts argue that there is at least a material question of fact for this issue. We disagree. BONY's declaration of ownership is evidence that BONY is not holding the note to secure some other obligation because the

---

[11] Although the note identifies a fixed principal amount of $875,000, that principal changes if the Daviscourts' monthly payment is less than the interest that has accrued that month.

note indicates that BONY is the beneficiary, and that, as beneficiary, BONY understands that the trustee will rely on the declaration in order to initiate a trustee's sale. If BONY were holding the note as security for another obligation, it could not call itself as the beneficiary.

The Daviscourts argue that the defendants' admission that BONY holds the note as trustee for a securitized trust means that BONY is holding the note as security for a different obligation. They ask how the court can "know that the separate obligation owed by the trustee to investors does not involve rehypothecation unless the purported beneficiary provides some evidence addressing this fact."[12] We reject both of these arguments because they are purely speculative. The Daviscourts' have not offered any actual evidence to contradict BONY's declaration that it is the beneficiary.

In sum, BONY is the beneficiary. Therefore, it was not outrageous for any of the defendants to record or serve documents that stated or relied on the fact that BONY is the beneficiary, including documents by which BONY appointed Quality as its trustee.

*Quality's Physical Location & Failure to Notify the Daviscourts*

Finally, the Daviscourts argue that two specific acts by Quality were outrageous: (1) failing to maintain a physical address, and (2) failing to notify the Daviscourts that it had discontinued the trustee's sale. First, all of Mark's attempts to visit Quality's physical location in Seattle occurred in March 2014. The failure to maintain a physical office for one month is not outrageous or extreme. Second,

---

[12] Appellants' Opening Br. at 43.

Mark does not cite any authority requiring the trustee to inform the borrower that it is discontinuing the trustee's sale. Mark's opinion that "Quality stopped the sale without telling [him] in order to taunt [him] and cause [him] injury" is just that, an opinion.[13] He does not offer any evidence that Quality's conduct was outside the bounds of decency. Even assuming Quality was aware that Mark was "peculiarly susceptible to emotional distress," none of its acts were outrageous enough to warrant liability.[14]

Accordingly, the trial court did not err by granting the defendants' motions for summary judgment on the Daviscourts' outrage claims.

## Civil Conspiracy

The Daviscourts argue that the trial court erred by granting the defendants' motions for summary judgment on their civil conspiracy claims because the defendants' conspired to accomplish a lawful purpose, foreclosing on the deed of trust, through unlawful means, specifically, illegally recording false documents. The Daviscourts argue that, by recording the documents containing false statements, the defendants violated two criminal laws. We disagree because the Daviscourts have not shown that the defendants' conduct violated either statute.

"[A]n actionable civil conspiracy exists if two or more persons . . . combine to accomplish some purpose not in itself unlawful by unlawful means." Corbit v. J. I. Case Co., 70 Wn.2d 522, 528, 424 P.2d 290 (1967).

The Daviscourts argue that the defendants attempted to nonjudicially foreclose by unlawfully filing documents containing false statements. They rely on

---

[13] CP at 256.
[14] Appellants' Opening Br. at 27.

15

two criminal statutes to support their claim that the defendants' conduct was unlawful: RCW 9.38.020 and RCW 40.16.030. Even assuming that the defendants recorded documents containing some false information, the Daviscourts have not produced evidence that the defendants' acts violated either statute.

First, under RCW 9.38.020, "[e]very person who shall maliciously or fraudulently execute or file for record any instrument, or put forward any claim, by which the right or title of another to any real or personal property is, or purports to be transferred, encumbered or clouded, shall be guilty of a gross misdemeanor."

The Daviscourts make no attempt to show that the defendants acted maliciously or fraudulently. Because the Daviscourts do not show that the defendants had the necessary mens rea, they have not shown that the defendants violated this statute.

Second, under RCW 40.16.030, "[e]very person who shall knowingly procure or offer any false or forged instrument to be filed, registered, or recorded in any public office, which instrument, if genuine, might be filed, registered or recorded in such office under any law of this state or of the United States, is guilty of a class C felony."

In State v. Price, the court had to decide whether a "steelhead receiving ticket" was an instrument for purposes of RCW 40.16.030. 94 Wn.2d 810, 817-19, 620 P.2d 994 (1980). The court determined that the legislature intended "instrument" to encompass a document,

> which is required or permitted by statute or valid regulation to be filed, registered, or recorded in a public office if (1) the claimed falsity relates to a material fact represented in the instrument; and (2a) the information contained in the document is of such a nature that the

> government is required or permitted by law, statute or valid regulation to act in reliance thereon; or (2b) the information contained in the document materially affects significant rights or duties of third persons, when this effect is reasonably contemplated by the express or implied intent of the statute or valid regulation which requires the filing, registration, or recording of the document.

Price, 94 Wn.2d at 819. The Supreme Court has affirmed the use of this test. State v. Hampton, 143 Wn.2d 789, 793-94, 24 P.3d 1035 (2001).

The Daviscourts have not shown that the documents at issue in this case are "instruments" within the meaning of the statute because they have not shown that any of the falsities are material or materially affect the Daviscourts' rights. As explained above, it was not false to say that AWL was the lender, that BONY was the beneficiary, or that BONY appointed Quality as a successor trustee. There remains an argument, at least, that the identification of MERS as the original beneficiary was false. But that designation was immaterial.[15]

Accordingly, the Daviscourts have not shown that any of the defendants employed or conspired to employ any unlawful means to accomplish their goal of enforcing the nonjudicial foreclosure. The trial court did not err by granting the defendants' motions for summary judgment on the civil conspiracy claim.

---

[15] Relying on State v. Sanders, the Daviscourts argue that the statute does not require the falsity to be material. 86 Wn. App. 466, 470, 937 P.2d 193 (1997). In Sanders, Division Two of the Court of Appeals held that the State did not have to prove that a forged child support order "was 'materially false' in order to establish a violation of RCW 40.16.030." 86 Wn. App. at 470. But that case did not examine whether the forged child support order was an instrument. Sanders, 86 Wn. App. at 470.

Two interpretations of Sanders are possible. First, it is holding that materiality is not relevant to whether a document is an instrument for purposes of the statute. In that case, it would conflict with Hampton and Price, and would not be good law. Second, it applies only to cases where there is no question that the document at issue is an instrument. Either way, it is not controlling here.

## Consumer Protection Act

The Daviscourts argue that the SPS defendants violated the CPA, because SPS, not BONY, appointed Quality as trustee, in violation of the DTA. Because SPS was acting as BONY's agent, we disagree.

The Daviscourts argue that Quality violated the CPA because it violated the DTA when it failed to maintain a physical address, ignored problems with its appointment as trustee, and failed to notify the Daviscourts that it had cancelled the trustee's sale. We conclude that none of Quality's actions were violations of the CPA because none constituted an unfair or deceptive act.

The CPA forbids unfair competition and unfair or deceptive acts. "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020. The Supreme Court identified five elements for a private cause of action for violation of the CPA: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

### Unfair or Deceptive Acts – SPS Defendants

The Daviscourts allege that the SPS defendants violated RCW 61.24.010(2) and RCW 61.24.030(7) when SPS appointed Quality as a trustee, even though BONY was the beneficiary of the deed of trust.

Under RCW 61.24.030(7), the trustee must have proof that the beneficiary is the owner of the promissory note secured by the deed of trust before it may

record notice of the trustee's sale. "A declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note or other obligation secured by the deed of trust shall be sufficient proof as required under this subsection." RCW 61.24.030(7)(a).

The Daviscourts argue that only a beneficiary, not an agent of the beneficiary, may make that declaration. They are mistaken. An agent may make the declaration and act on behalf of the beneficiary in DTA proceedings, so long as the agent identifies the principal whose control it is under. See Rucker v. Novastar Mortg., Inc., 177 Wn. App. 1, 15, 311 P.3d 31 (2013) (quoting Bain, 175 Wn.2d at 107).

Here, the declaration of ownership explicitly stated that the person signing the document, a "Document Control Officer for Select Portfolio Servicing, Inc.," was "duly authorized to make [the] declaration on behalf of" BONY, and identified BONY the beneficiary.[16] SPS, acting "as Attorney in Fact" for BONY, appointed Quality.[17]

We conclude that, because SPS was acting as BONY's agent, neither BONY nor SPS violated the DTA when SPS appointed Quality as the trustee. Thus, the Daviscourts have not shown that the SPS defendants engaged in any unfair or deceptive practices, and the trial court appropriately dismissed the Daviscourts' CPA claims against them.

---

[16] CP at 54.
[17] CP at 31-32.

19

*Unfair or Deceptive Acts – Quality*

The Daviscourts argue that Quality violated the DTA. We conclude that, even assuming Quality violated the DTA, the Daviscourts have not shown that that violation constitutes an unfair or deceptive act.

The DTA assigns the trustee a "duty of good faith to the borrower, beneficiary, and grantor." RCW 61.24.010(4).

The Daviscourts argue that Quality violated the DTA by breaching its duty of good faith to them in two ways. First, the Daviscourts argue that Quality violated its duty of good faith when it "ignored obvious problems with its appointment as trustee."[18] Because, as explained above, there was nothing wrong with that appointment, we reject that argument. In their reply brief, the Daviscourts argue that Quality was not entitled to rely on the declaration of ownership because the declaration was contested.[19] But none of the evidence the Daviscourts cite gives rise to an inference that Quality would have known the declaration was contested *before* it initiated foreclosure proceedings.

Second, the Daviscourts argue that Quality violated its duty of good faith by failing to notify the Daviscourts that it had cancelled the trustee's sale. Once again, the Daviscourts do not cite any authority that a trustee has a duty to notify the borrower when it cancels the sale. The Daviscourts cite numerous examples of courts holding that a trustee's actions or inactions violated the CPA, but all of the actions are more serious than failing to notify the borrower that the trustee has cancelled the sale. See, e.g., Klem v. Wash. Mut. Bank, 176 Wn.2d 771, 789-92,

---

[18] Appellants' Opening Br. at 47.
[19] Appellants' Reply Br. at 24.

295 P.3d 1179 (2013) ("Quality abdicated its duty to act impartially toward both sides" when it refused to postpone a trustee's sale because it did not have the beneficiary's permission.).[20]

We conclude that the Daviscourts have not shown that Quality breached its duty of good faith when it failed to notify them that it had cancelled the sale.

Finally, the Daviscourts argue that Quality violated its statutory duty to maintain a physical presence in Washington.

The trustee "must maintain a physical presence" at a "street address" in Washington, prior to the date of the notice of trustee's sale and continuing thereafter through the date of the trustee's sale. RCW 61.24.030(6). The statute does not define "physical presence."

Here, Mark's unsuccessful attempts to access Quality's office and his observation that the callbox at Quality's alleged address did not list Quality in the directory are sufficient to raise a genuine issue of material fact whether Quality had any employees working at its address in Seattle. Therefore, the Daviscourts have likely raised a genuine issue of material fact whether Quality violated the DTA.

But, regardless, that is not the end of the inquiry. The Daviscourts also have to show that the violation of the DTA is an unfair or deceptive act. Relying on Frias v. Asset Foreclosure Services, Inc., the Daviscourts appear to argue that any violation of the DTA is automatically a deceptive or unfair practice. 181 Wn.2d 412, 432-33, 334 P.3d 529 (2014). In fact, the holding in Frias is much more

---

[20] But, in Klem, the court also relied on the trustee's fiduciary duty to the grantor. 176 Wn.2d at 789-92. In 2008, the legislature amended the DTA, adding a provision that explicitly stated that the trustee does not have a fiduciary duty to the grantor. RCW 61.24.010(3) (amended by LAWS OF 2008, ch. 153, § 1).

limited. "[U]nder appropriate circumstances, DTA violations may be actionable under the CPA . . . . Such claims are governed by the ordinary principles applicable to all CPA claims." Frias, 181 Wn.2d at 433. To show that an act is unfair or deceptive under ordinary CPA principles, a "plaintiff need not show the act in question was intended to deceive, only that it had the capacity to deceive a substantial portion of the public." Panag v. Farmers Ins. Co., 166 Wn.2d 27, 47, 204 P.3d 885 (2009).

Here, the Daviscourts have not made any showing that the failure to maintain a physical presence had the capacity to deceive a substantial portion of the public. Accordingly, we conclude that the trial court properly granted summary judgment dismissing the Daviscourts' CPA claims.

Affirmed.

Trickey, ACJ

WE CONCUR:

_____

**Daviscourt v. Quality Loan Services Corporation of Washington**
**No. 74979-0-I**


DWYER, J. (concurring)—I disagree that a question of fact was presented regarding whether Quality maintained a physical presence at a street address in Washington. All evidence is that it did.

The Daviscourts' evidence is that Mark located the Quality office at the street address set forth but that he was unable to gain access. Nothing in the statute requires that a borrower—without an appointment—be granted access to Quality's office at the borrower's whim.

No question of fact is presented on this issue. In all other respects, I join in the majority opinion.

_Dwyer, J._